In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00090-CR


______________________________




ANTRON RAMMEL BLAYLOCK, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 115th Judicial District Court


Upshur County, Texas


Trial Court No. 13,170




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 Antron Rammel Blaylock was indicted December 4, 2002, for the offense of delivering more
than one but less than four grams of cocaine on or about April 16, 2002. He was also charged with
having previously been convicted of two prior felony offenses. After a jury conviction and
assessment of punishment, Blaylock was sentenced to sixty-five years' confinement April 12, 2005. 
The Texas Court of Criminal Appeals has authorized an out-of-time appeal. Blaylock raises four
points of error: (1) improper evidence admitted over a Crawford objection; (2) denial of a speedy
trial; (3) sufficiency of the evidence; and (4) improper sentence. We will affirm the judgment of the
trial court. 

I. Background Facts

 The State produced evidence to show that Blaylock sold cocaine to a non law enforcement
agent, Karen Driggers, April 16, 2002, at a motel in Gilmer, Texas. A video camera had been
installed in the room so that law enforcement officers in the adjacent room could observe the
transaction. Officers Danny Butler and Bobby Joe Gibbons observed the transactions; their
testimony was consistent with Driggers' testimony. 

 At trial, the State called the supervising chemist for the Texas Department of Public Safety
laboratory in Tyler, Dennis Keith Pridgen, to testify about testing of the controlled substance. 
Pridgen had not personally conducted the tests of the substance; that was done by Ruben Rendon,
a chemist who no longer worked in the area. After reviewing the test results, Pridgen concluded the
substance contained 2.98 grams of cocaine. 

II. Did the expert testimony violate Crawford? 

 In testifying that the substance was cocaine, Pridgen reviewed and used test results of the
substance conducted by another chemist. (1) Blaylock objects that such evidence is a violation of
Crawford v. Washington, 541 U.S. 36 (2004). 

 In Crawford, the United States Supreme Court held that the admission of a hearsay statement
made by a nontestifying declarant violates the Sixth Amendment if the statement was testimonial
when made and the defendant lacked a prior opportunity for cross-examination. Id. at 68. Thus, a
"testimonial" statement is inadmissible absent a showing that the declarant is presently unavailable
and the defendant had a prior opportunity for cross-examination, even if the statement falls under
a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness. Id. at 58-60,
68. Although the Crawford opinion does not provide a comprehensive definition of "testimonial,"
it does indicate that the term covers ex parte in-court testimony or its functional equivalent,
extrajudicial statements contained in formalized testimonial materials such as prior testimony at a
preliminary hearing, before a grand jury, or at a former trial, and police interrogations. 

 The proper standard of review on the issue before us is a hybrid one: both deferential and
de novo. "Although we defer to a trial court's determination of historical facts and credibility, we
review a constitutional legal ruling, i.e., whether a statement is testimonial or non-testimonial,
de novo." Wall v. State, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006); see also Lilly v. Virginia, 527
U.S. 116, 136 (1999) (stating courts should independently review whether out-of-court statements
violate the Confrontation Clause). De novo review is appropriate because the legal ruling of whether
a statement is testimonial under Crawford is determined by the standard of an objectively reasonable
declarant standing in the shoes of the actual declarant. Wall, 184 S.W.3d at 742-43. "On that
question trial judges are no better equipped than are appellate judges, and the ruling itself does not
depend upon demeanor, credibility, or other criteria peculiar to personal observation." Id. at 743;
Dixon v. State, 244 S.W.3d 472 (Tex. App.--Houston [14th Dist.] 2007, pet. ref'd).

 The rationale for allowing an expert witness to express an opinion is that the witness has
specialized education, training, and experience to survey information and form conclusions based
on studies, tests, experiments, and facts. For instance, medical doctors rely on tests made by others
such as reports regarding blood tests, vital signs, X-rays, MRI examinations, CT scans, and a myriad
of other information, including patient-subjective complaints. The technicians who drew the blood,
applied the blood pressure cuff, or conducted the X-ray examination are not required to testify in
person because their test results are simply used by the expert to arrive at a diagnosis of an illness
or injury. The data from these tests is normally relied on by the expert and without which the expert
could not properly derive such conclusions. The evidence that is ultimately admitted is the testimony
of the expert witness who is available for cross-examination as to his or her opinions. The Texas
Rules of Evidence recognize this and allow an expert, in forming an opinion, to consider
information, even if it is not legally admissible evidence, if it is a type reasonably relied on by
experts in the field. See Tex. R. Evid. 703. The Texas Court of Criminal Appeals has approved the
admission of expert testimony based on test results that another has conducted. See Martinez v.
State, 22 S.W.3d 504 (Tex. Crim. App. 2000); Aguilar v. State, 887 S.W.2d 27 (Tex. Crim. App.
1994). These cases primarily dealt with the rules of evidence rather than confrontation issues and
were decided before Crawford. 

 Blaylock urges that Crawford alters that ordinary understanding of an expert witness'
testimony and that his right of confrontation was denied by being unable to cross-examine Rendon,
rather than Pridgen. The parties stipulated that Pridgen was an expert in the field of chemistry. 
Pridgen testified about the type of tests that are used to determine the composition of a substance,
the instruments used (infrared spectroscopy and gas chromatography mass spectroscopy), the
laboratory method of assuring a chain of custody of the evidence, and the specific tests done on this
substance (colorimetric tests--marquis and carbothiocyanate). In response to cross-examination,
Pridgen gave a detailed scientific explanation of the procedure for extracting the identifiable
components of the substance examined, a procedure he stated was "a definitive test for cocaine." 
He explained that his testimony was not based simply on "reading notes" of the examiner, but by
"looking at the printed results from the instruments." This testimony demonstrates that Pridgen was
applying his expertise to the scientific data in arriving at his opinion. Based on this explanation, we
believe that this testimony was the expert opinion of Pridgen based on definitive tests done on the
substance and was not merely a recitation of the notes of the chemist who actually did the test. 
Pridgen was cross-examined by the defense. 

 Blaylock cites the case of Deener v. State, 214 S.W.3d 522 (Tex. App.--Dallas 2006, pet.
ref'd). In Deener, the State sought to introduce the certificates of analysis of physical evidence and
chain of custody affidavits at trial. See Tex. Code Crim. Proc. Ann. art. 38.41 (Vernon 2005). 
Deener objected at his second trial (the first ended in a hung jury mistrial). The Dallas Court of
Appeals held that such affidavits were testimonial evidence and barred by Crawford, but Deener had
failed to object to the affidavits at least ten days before trial as required by statute and thereby
forfeited the objection. The distinction between Deener and this case is that, in Deener, no witness,
expert or otherwise, was available for cross-examination and the State attempted to introduce
affidavits from witnesses who were not present. So the evidence was (1) made by an absent
declarant and (2) testimonial in nature. Here, the evidence was the expert testimony of Pridgen; the
State did not attempt to introduce any certificate of analysis, affidavit, or laboratory test report
concerning the substance analysis. This evidence was not merely the out-of-court statements from
an absent declarant; instead, it was the expert opinion of an in-court witness who, in arriving at his
conclusions, had reviewed the scientific test results conducted by another chemist. Deener does not
support the conclusion Blaylock proposes. 

 Other than the Deener case, the parties furnished no other authority that addresses the issue
before this Court. But, other courts have dealt with these Crawford issues. The Seventh Circuit
Appeals Court of the United States faced a very similar matter in United States v. Moon, 512 F.3d
359 (7th Cir. 2008). In Moon, James DeFrancesco, a chemist employed by the Drug Enforcement
Agency, testified that the substance was cocaine. The actual laboratory work was done by another
chemist, Ragnar Olson, who had left federal employment. Over a confrontation objection,
DeFrancesco testified about the machines used, the instruments' output, and Olson's laboratory notes. 
Even though the court was reviewing the evidence based on a "plain error" standard, the Seventh
Circuit found "no problem with DeFrancesco's testimony." The court suggested the notes of Olson
would be inadmissible if the proper objection was made, but the "Sixth Amendment does not
demand that a chemist or other testifying expert have done the lab work himself." Id. at 362.

 Other courts, considering Crawford confrontation objections, have come to a similar
conclusion. See, e.g., State v. Delaney, 613 S.E.2d 699 (N.C. Ct. App. 2005) (chemist testified from
another's report); State v. Barton, 709 N.W.2d 93, 97 (Wis. Ct. App. 2005) (expert satisfied
confrontation right because the expert "formed his opinion based on his own expertise and his own
analysis of the scientific testing. He then presented his conclusions to the jury, and he was
available . . . for cross-examination.").

 This case does not involve one expert merely reading to the jury a report conducted by
another. Neither is it like Deener, where affidavits of a nonappearing expert are sought to be
introduced. The testimony of this expert witness concerning the chemical analysis of the substance,
determined by applying his expertise to reliable scientific test data, was admissible as he was subject
to cross-examination. We believe this fulfills the requirement of the Confrontation Clause. 

III. Speedy Trial 

 Blaylock argues he was denied his constitutional right to a speedy trial. The Sixth
Amendment to the United States Constitution guarantees the accused's right to a speedy trial. 
Zamorano v. State, 84 S.W.3d 643, 647 & n.5 (Tex. Crim. App. 2002). In addition, Article I,
Section 10 of the Texas Constitution guarantees the accused in all criminal prosecutions the right
to a speedy and public trial. Id. at 647 & n.6; see Tex. Const. art. I, § 10.

 In reviewing a trial court's decision on a speedy trial motion, we review the trial court's
determination of the historical facts under an abuse of discretion standard and conduct a de novo
review of the legal components by independently engaging in the balancing test set out in Barker v.
Wingo, 407 U.S. 514, 530 (1972); see Kelly v. State, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005);
Johnson v. State, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). Barker requires that we balance the
following four factors: (1) length of the delay; (2) reasons for the delay; (3) defendant's assertion
of the speedy trial right; and (4) prejudice to the defendant resulting from the delay. Barker, 407
U.S. at 530; Kelly, 163 S.W.3d at 726. In conducting the balancing test, no single factor is
determinative, and the conduct of both the prosecutor and the defendant are to be weighed. See
Barker, 407 U.S. at 530, 533; State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).

 A. Length of the Delay

 We measure the delay from the defendant's arrest or formal accusation. Shaw v. State, 117
S.W.3d 883, 889 (Tex. Crim. App. 2003). The evidence shows that the indictment was issued
December 4, 2002. The trial was conducted April 11, 2005, resulting in a delay of approximately
twenty-nine months. Texas courts have generally held that a delay of eight months or more is
"presumptively prejudicial" and will trigger a speedy trial analysis. See Zamorano, 84 S.W.3d at 649
(citing Harris v. State, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992)). "Presumptive prejudice" does
not "necessarily indicate a statistical probability of prejudice; it simply marks the point at which
courts deem the delay unreasonable enough to trigger the Barker enquiry." Munoz, 991 S.W.2d at
822 (citing Doggett v. United States, 505 U.S. 647, 652 n.1 (1992)). This delay is sufficient to
trigger a speedy trial analysis under Barker. 

 B. Reasons for the Delay

 A short hearing was conducted on Blaylock's motion to dismiss for lack of a speedy trial. 
At that hearing, the State presented one witness; Blaylock presented no evidence. The only witness,
Patty Kennimer, testified that she is a parole officer for the State of Texas and was the supervising
parole officer for Blaylock. She further testified that Blaylock had an appointment with her on
January 3, 2003, but failed to appear. Kennimer attempted to locate Blaylock by calling his uncle,
Curtis Blaylock, who advised her that Blaylock had moved two or three weeks previously. 
Kennimer sent a letter to Blaylock advising him that he must report on January 9, 2003, which he
failed to do. She then called the local county jail, both hospitals, and checked his criminal history
in an effort to determine his whereabouts. After these actions proved to be unfruitful, Kennimer
reported that Blaylock was an absconding parolee and requested that a blue warrant be issued for his
arrest. (2) During the trial, Gibbons testified that attempts to locate Blaylock included placing his
identifying information in the TCIC and NCIC (3) computer systems which would alert officers making
a traffic stop or arrest that he was wanted. The record shows that a capias was issued for Blaylock
December 4, 2002, and he was served in the Smith County, Texas, jail with the capias and copy of
the indictment November 15, 2004. There is no explanation in the record as to where Blaylock was
from January 2003 until November 2004. 

 The record before the trial court and this Court shows that Blaylock absconded from
supervision from parole in January 2003. His presence thereafter is unaccounted for until November
2004 when he was served with the indictment while incarcerated in the Smith County, Texas, jail. 

 Once it has been determined that a presumptively prejudicial delay has occurred, the State
bears the initial burden of providing a justification for the delay. Emery v. State, 881 S.W.2d 702,
708 (Tex. Crim. App. 1994); State v. Rangel, 980 S.W.2d 840, 843 (Tex. App.--San Antonio 1998,
no pet.). Different reasons for the delay are assigned different weights: an intentional delay for
tactical reasons is weighed heavily against the State; a neutral reason, such as overcrowded courts,
is weighed less heavily against the State; a valid reason is not weighed against the State at all; and
delay attributable to the defendant may constitute a waiver of the speedy trial claim. Munoz, 991
S.W.2d at 822.

 Here, the State offered evidence to explain that Blaylock absconded from parole supervision
immediately after the indictment was issued. Agents of the State made efforts to locate Blaylock,
to no avail. No contradicting evidence was presented. This is a valid reason for the delay, or in
some circumstances a waiver of the speedy trial claim. The evidence presented on the reasons for
the delay weigh heavily against a finding of a violation of the speedy trial right. 

 C. Assertion of the Right

 The third Barker factor requires a determination of whether the defendant asserted his or her
right to a speedy trial. Barker, 407 U.S. at 532; see also Munoz, 991 S.W.2d at 825 (placing burden
on defendant to assert or demand right to speedy trial). The defendant's assertion of that right is
entitled to strong evidentiary weight when determining whether the defendant was deprived of his
or her right to a speedy trial. Barker, 407 U.S. at 531-32; Zamorano, 84 S.W.3d at 651. Although
the defendant's failure to timely seek a speedy trial does not amount to a waiver of the right, such
failure makes it difficult for a defendant to prevail on a speedy trial claim. See Shaw v. State, 117
S.W.3d 883, 890 (Tex. Crim. App. 2003) (citing Barker, 407 U.S. at 532). 

 Counsel was appointed for Blaylock November 18, 2004, after he was in custody and had
been served with process. On January 11, 2005, a motion for speedy trial and to set aside the
indictment for lack of a speedy trial was filed by Blaylock. The trial court set the case during a two-week period beginning February 14, 2005. A pretrial hearing on the speedy trial motions was heard
February 2, 2005, and after evidence was presented, the trial court took the issue under advisement. 
On February 25, 2005, the trial court notified the parties that it was denying the motion to set aside
the indictment, gave the case priority, and set the trial for April 2005. The trial began April 11,
2005. We find that, under these facts, Blaylock properly asserted his right to a speedy trial and was
granted a trial promptly thereafter. Overall, this factor would weigh moderately in his favor. 

 D. Prejudice 

 The final factor is prejudice to the defendant, which should be assessed in light of the
interests of the defendant that the right to a speedy trial was designed to protect. Barker, 407 U.S.
at 532; Munoz, 991 S.W.2d at 826. These interests are: (1) preventing oppressive pretrial
incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility
that the defense will be impaired. Barker, 407 U.S. at 532; Munoz, 991 S.W.2d at 826. Of these
interests, the most important is protecting a defendant's ability to adequately prepare his or her case
because compromise of this interest "skews the fairness of the entire system." Munoz, 991 S.W.2d
at 826 (quoting Barker, 407 U.S. at 532-33). The defendant has the burden to make some showing
of prejudice, although a showing of actual prejudice is not required. Id. When the defendant makes
a prima facie showing of prejudice, the burden shifts to the State to show that the defendant suffered
"no serious prejudice beyond that which ensued from the ordinary and inevitable delay." Id. (quoting
Ex parte McKenzie, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)).

 The record indicates that Blaylock was incarcerated from November 13, 2004 until trial, as
he was given credit for his time served in jail beginning from that date until the date of the judgment. 
This resulted in an approximate five-month pretrial incarceration, which cannot be considered as
oppressive, but is no more than ordinary and inevitable delay. No evidence was presented as to any
anxiety or concern of the accused. Most importantly, no evidence was presented that Blaylock's
defense was impaired or hampered by the delay. The trial consisted of evidence of a single episode
of delivery of a controlled substance involving one undercover witness and two law enforcement
officers watching the transaction in an adjoining room by video, which was played for the jury. 
Blaylock does not designate any evidence in the record demonstrating prejudice and only urges that
"Appellant had no duty to make an actual showing of prejudice, he alleged and argued that such a
delay would greatly affect his memory and ability to assist in preparation of trial and to remember
other facts and the identity and location of witnesses." While these matters are alleged in the motion,
Blaylock did not present any such evidence and there is no evidence supporting these allegations in
the record. We find no evidence of any harm or prejudice to Blaylock resulting from the delay. 
Overall, we find this factor does not weigh toward finding a violation of Blaylock's speedy trial right. 

 E. Balancing of the Four Factors

 The length of the delay was sufficient to require an investigation of the other factors and so
weighs moderately against the State. The only reason provided in the evidence for the delay is that
Blaylock absconded from supervision from his parole officer. She attempted to locate him through
family, jails, and hospitals. He failed to appear in January 2003 for reports with the parole officer. 
 Law enforcement officials placed his name on the state and federal crime information indices, which
buttresses the claim that he was an absconder. Based on this evidence, we find this factor weighs
heavily against a finding that Blaylock's speedy trial right was violated. Blaylock did assert his right
shortly after he was served with the indictment in the case; this factor would weigh moderately in
his favor. In this matter, Blaylock has shown no prejudice associated with the delay. Although a
showing of "actual prejudice" is not required in Texas, the burden is on the accused to make some
showing of prejudice which was caused by the delay of his or her trial. Harris v. State, 489 S.W.2d
303, 308 (Tex. Crim. App. 1973) (citing Courtney v. State, 472 S.W.2d 151 (Tex. Crim. App.
1971)). This factor weighs heavily against finding a violation of Blaylock's speedy trial right. After
considering all factors involved, we conclude Blaylock was not denied his constitutional right to a
speedy trial. 

IV. Insufficiency of the Evidence

 Blaylock argues "[s]ince the testimony of the Chemist Pridgen was erroneously admitted into
evidence and since the evidence concerning the identity, amount and analysis of the subject
substance should be omitted as evidence, the evidence is otherwise insufficient to sustain the verdict
of the jury." (4) This issue is conditioned on a finding that Pridgen's testimony was inadmissible and
therefore cannot be considered by this Court. Since we have found Pridgen's testimony to be
admissible, the condition on which this point of error is premised is not established. Blaylock does
not argue that the evidence is insufficient if Pridgen's testimony is considered. Without repeating
the evidence previously recited, including Pridgen's testimony, we find the evidence is both factually
and legally sufficient to sustain the jury verdict. Therefore, this point of error is overruled. 

V. Improper Sentence

 In his final point, Blaylock argues that the judgment fails to show the trial court had the
authority to enter a sentence in excess of twenty years' confinement. This argument originates from 
language contained in the judgment indicating that the offense was a second-degree felony with a
punishment range from two to twenty years' confinement and a maximum fine of $10,000.00. 

 The indictment charged Blaylock with delivery of more than one gram but less than four
grams of a controlled substance: cocaine, which is a second-degree felony. Tex. Health & Safety
Code Ann. § 481.112 (Vernon 2003). Additionally, the indictment alleged that Blaylock had
previously been convicted of two felony offenses. Blaylock pled "true" to the enhancement
allegations, and the jury found that Blaylock had finally and sequentially been previously found
guilty of both prior felonies as alleged. Therefore, the range of punishment was elevated to
imprisonment for life, or for any term of not more than ninety-nine years or less than twenty-five
years. Tex. Penal Code Ann. § 12.42(d) (Vernon Supp. 2007). The jury assessed punishment at
sixty-five years' confinement. The judgment expressly states that Blaylock entered a plea of "true"
to the enhancement and that a finding of "true" was made to the enhancement allegation. The only
omission from the judgment form is the information provided regarding "Applicable punishment
range (including enhancement, if any)." The information given was "Second Degree 2-20 yrs in
prison/max $10,000 fine." 

 This Court has the authority to reform the judgment to make the record speak the truth when
the matter has been called to our attention by any source. French v. State, 830 S.W.2d 607 (Tex.
Crim. App. 1992). In Asberry v. State, 813 S.W.2d 526 (Tex. App.--Dallas 1991, pet ref'd), the
court noted that the authority of the appellate court to reform incorrect judgments is not dependent
on request of any party; the appellate court may act sua sponte. The Texas Rules of Appellate
Procedure provide direct authority for this Court to modify the judgment of the trial court. Tex. R.
App. P. 43.2.

 We will modify the judgment to reflect the correct range of punishment as follows: 
"Imprisonment in the Institutional Division of the Texas Department of Criminal Justice for life, or
for any term of not more than 99 years or less than 25 years." See Tex. R. App. P. 43.2(b).

 The trial court properly sentenced Blaylock to sixty-five years' confinement as assessed by
the jury. 

 As modified, we affirm the judgment of the trial court. 



 Jack Carter

 Justice


Date Submitted: February 28, 2008

Date Decided: May 14, 2008


Publish

1. Evidence of the amount and weight of the substance determined by the laboratory was
introduced without objection by Gibbons before Pridgen's testimony. Gibbons testified that he
weighed the substance and determined the weight as 4.1 grams. He was then asked what the
laboratory found the weight to be and responded, "Just a little under 3 grams, like 2.98 I believe what
it was." It is well established that questions regarding the admission of evidence are rendered moot
if the same evidence is elsewhere introduced without objection; any error in admitting evidence over
a proper objection is harmless if the same evidence is subsequently admitted without objection. 
Chamberlain v. State, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999). Therefore, we will not address
whether Pridgen's testimony as to the weight of the substance was admissible, but our analysis will
be limited to his testimony that the substance was a controlled substance: cocaine. 
2. A "blue warrant" is an arrest warrant issued when a parolee is suspected of violating the
conditions of his or her parole. See Franklin v. Kyle, 899 S.W.2d 405, 406 n.1 (Tex. App.--Waco
1995, no pet.); see also Tex. Gov't Code Ann. § 508.252 (Vernon 2004).
3. The Texas Crime Index Center and National Crime Index Center.
4. We review the legal sufficiency of the evidence considering all the evidence in the light most
favorable to the verdict--could a rational jury have found the essential elements of delivery of a
controlled substance (cocaine) in an amount of more than one but less than four grams, beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Hooper v. State, 214 S.W.3d
9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318-19).

 When reviewing the evidence for factual sufficiency, we review all the evidence admitted
at trial in a neutral light. The evidence supporting a jury's verdict may be factually insufficient if the
evidence supporting the jury's verdict is so weak that the jury's judgment appears clearly wrong or
manifestly unjust or if the evidence supporting the judgment of conviction is outweighed by the great
weight and preponderance of the evidence. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App.
2007); McDowell v. State, 235 S.W.3d 294, 296 (Tex. App.--Texarkana 2007, no pet.). This factual
sufficiency standard requires that we reach "a high level of skepticism" before we may reverse a
jury's verdict based on factual insufficiency. Roberts, 220 S.W.3d at 524.